UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD ZIMMERMAN<br><br>*Plaintiff*,<br><br>vs.<br><br>AIR & LIQUID SYSTEMS CORP., ET AL.<br><br>*Defendants*. | No. 3:14-CV-00176 (MPS)<br><br><br><br><br><br>SEPTEMBER 8, 2015 |

### Memorandum of Law in Support of Motion for Summary Judgment

The defendant, **Crane Co.**, submits this memorandum of law in support of its motion for summary judgment dated September 8, 2015.

### Statement of Facts

This is a products liability action. The plaintiff, Ronald Zimmerman, alleges that, during his naval service from 1966 to 1971, he was exposed to asbestos-containing products that were manufactured by, among other companies, Crane Co. (*See* Compl. ¶ 4.)[1] The plaintiff further claims that his asbestos exposure caused him to develop "asbestos-related Mesothelioma and other asbestos-related pathologies." (Compl. ¶ 14.)

---

[1] The plaintiff's Complaint is attached as Exhibit 1 to Viad Corp.'s Notice of Removal [Doc. #1] filed February 11, 2014. Although the plaintiff also alleges that he was exposed to asbestos while working as a vehicle mechanic in the National Guard in the 1970s, (*see* Compl. ¶ 4), there is no claim or evidence that Crane Co. manufactured any of the asbestos-containing brake pads with which he worked. (*See* Local Rule 56(a)1 Statement ["LRS"] ¶ 1.)

As a result, he seeks damages for injuries including, but not limited to, "loss of life's enjoyment" and lost earning capacity. (*See* Compl. ¶¶ 13–15.)

Crane Co. now moves this Court to enter summary judgment in its favor as to all counts of the plaintiff's Complaint because: (1) the plaintiff has no evidence that he was exposed to any Crane Co. products containing asbestos; and, (2) as a matter of maritime law, the plaintiff cannot recover damages for his alleged "loss of life's enjoyment" or lost future earning capacity.

## Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings and supporting documents "show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The movant, however, "need not prove a negative . . . on an issue that the plaintiff must prove at trial." *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001). The movant's burden "will be satisfied if he or she can point to an absence of evidence to support an essential element of the non-moving party's claim." *Capuano v. Island Computer Prod., Inc.*, 382 F. Supp. 2d 326, 336 (D. Conn. 2005).

Once the movant meets its burden, the burden then shifts to the non-movant, who "must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor." *Adams v. Tetley USA, Inc*., 363 F. Supp. 2d 94, 103 (D. Conn. 2005). The non-movant "must do more than present evidence that is merely colorable, conclusory or speculative and must present concrete evidence from which a reasonable juror could return a verdict in his favor." *St. Ledger v. Area Coop. Educ. Serv*., 228 F. Supp. 2d 66, 69 (D. Conn. 2002)(citation and quotation marks omitted). If the non-movant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**Governing Maritime Law**

The district courts have original, exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction . . . ." 28 U.S.C. § 1333(1). Maritime jurisdiction "extends to and includes cases of injury or damage, to person or property, caused by a vessel on navigable waters, even though the injury or damage is done or consummated on land." 46 U.S.C. § 30101(a). Even when, like here, plaintiffs bring a state law claim, district courts must "apply substantive federal maritime law if [they] have admiralty jurisdiction." *Preston v. Frantz*, 11 F.3d 357, 358–59 (2d Cir. 1993), *cert. dismissed*, 512 U.S. 1279 (1994)(holding that maritime law governed Connecticut wrongful death claim). *See also Wahlstrom v. Kawasaki Heavy Indus*., *Ltd*., 4 F.3d 1084, 1087–88

(2d Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994)(holding that maritime law governed Connecticut products liability claim); *Szollosy v. Hyatt Corp.*, 208 F. Supp. 2d 205, 210 (D. Conn. 2002)(holding that maritime law applied despite fact that plaintiffs did not invoke maritime jurisdiction or assert maritime claim in complaint).

Maritime jurisdiction exists if the alleged tort claim satisfies "conditions both of location and of connection with maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.* 513 U.S. 527, 534 (1995). The "location" test requires the court to determine "whether the tort occurred on navigable water or whether an injury suffered on land was caused by a vessel on navigable water." *Id*. The "connection" test requires the court to determine "whether the incident has a potentially disruptive impact on maritime commerce . . . and whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Id*. (citation and internal question marks omitted).

The issue of whether maritime law governs sailors' or shipyard workers' products liability claims based on asbestos exposure is not new. In 1991, the United States Judicial Panel on Multidistrict Litigation centralized, in the Eastern District of Pennsylvania, "all asbestos-related personal injury and wrongful death actions then pending in federal court and not yet at trial." *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d 1377, 1377 (U.S. Jud. Pan. Mult. Lit. 2011). Since then, "literally tens of thousands of cases" have been transferred to three judges of the MDL including, and especially, Judge Eduardo Robreno. *Id*. at 1388 (according "special recognition" to

Judge Robreno). Suffice it to say, the MDL court's experience with asbestos-related litigation is unrivaled and, as the panel noted, its decisions should be given particular deference. *See id*. at 1379 (noting that courts should look to MDL "for useful guidance in the many substantive and thoughtful rulings that have been issued during the lengthy course of the multi-district proceedings.").

### *The "location" test*

As Judge Robreno has held, "in the case of asbestos-related disease arising from work on or around ships . . . the locality test is satisfied as long as *some portion* of the asbestos exposure occurred on a vessel on navigable waters." *Conner v. Alfa Laval, Inc*., 799 F. Supp. 2d 455, 466 (E.D. Pa. 2011)(emphasis added); *Cabasug v. Crane Co*., 956 F. Supp. 2d 1178, 1187 (D. Hawaii 2013)(same). Vessels that are docked or in drydock qualify as vessels on "navigable waters" for purposes of maritime jurisdiction. *See Sisson v. Ruby*, 497 U.S. 358, 367 (1990)(holding that storage and maintenance of vessel docked at marina on navigable waters triggered maritime jurisdiction); *Vasquez v. GMD Shipyard Corp*., 582 F.3d 293, 299 (2d Cir. 2009)(holding that ship in dry-dock is still in "navigable waters" for purposes of maritime jurisdiction).

Here, the plaintiff alleges that he was exposed to asbestos "while working in the Navy from 1966–1971." (Compl. ¶ 4.) In particular, the plaintiff testified that he served as a "reactor operator" aboard two nuclear submarines: the *USS Bluefish* and the *USS Sam Houston*. (LRS ¶ 2.) The plaintiff claims that he was present while others

performed maintenance aboard both boats, and that he worked alongside shipyard workers while the *Bluefish* was under construction at General Dynamics, Electric Boat Division in Groton, Connecticut. (LRS ¶ 3.)[2] To be sure, the U.S. Navy vessels on which the plaintiff served or worked qualify as "vessels on navigable waters" to satisfy the "location" test. *See John Crane, Inc. v. Jones*, 650 S.E.2d 851, 853–54 (Va. 2007) (holding that "location test" satisfied where asbestos exposure occurred during construction and repair of U.S. Navy ships at Newport News Shipyard).

*The "connection" test*

The first part of the "connection" test requires the court to determine "whether the general type of incident involved has a potentially disruptive impact on maritime commerce." *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 248 (2d Cir. 2014). In so doing, the court does not look to whether the particular facts of the case actually disrupted maritime commerce, but rather "whether similar occurrences are likely to be disruptive." *Id*. at 249 (citation omitted). The inquiry focuses on "whether the incident could be seen within a class of incidents that pose[ ] more than a fanciful risk to commercial shipping." *Id*. (citation omitted).

---

[2] Electric Boat manufactures submarines for the United States Navy. (LRS ¶ 4.)

Injuries to sailors and shipyard workers engaged in building or repairing U.S. Navy vessels have the potential to disrupt maritime commerce. *See id*. (noting that injuries to "persons engaged in maritime employment" have potential to disrupt maritime commerce); *Vasquez v. GMD Shipyard Corp*., 582 F.3d 293, 300 (2d Cir. 2009)(holding there is "little question" that "the death of persons repairing and refitting a vessel" has the potential to disrupt maritime commerce); *Coats v. Penrod Drilling Corp*., 61 F.3d 1113, 1119 (5th Cir. 1995)("Without a doubt, worker injuries, particularly to those involved in repair and maintenance, can have a disruptive impact on maritime commerce by stalling or delaying the primary activity of the vessel."); *see also Conner v. Alfa Laval, Inc*., 799 F. Supp. 2d 455, 467 n.14 (E.D. Pa. 2011)(stating that shipyard workers' specific injury of asbestos exposure on or around U.S. Navy ships has potential to disrupt maritime commerce).

The second part of the "connection" test requires the court to determine "whether the general character of the activity giving rise to the incident bears a substantial relationship to traditional maritime activity." *Tandon,* 752 F.3d at 248. Although "[t]he first part of the connection test looks to the nature of the incident that immediately caused the underlying injury; the second part, by contrast, looks to the nature of the broader activity giving rise to that incident." *Id*. at 250–51 (citing examples illustrating difference between two parts of "connection" test). The second part of the connection test looks "more broadly at the proximate causes of the event" to

determine whether it "originated in the maritime activity of a tortfeasor." *Id.* at 251 (citation omitted).

The type of incident at issue here is a sailor's alleged exposure to asbestos while serving[3] and working on U.S. Navy submarines. The nature of the activity giving rise to that incident is the manufacture of products that are essential to the submarine's ability to function. *See Conner*, 799 F. Supp. 2d at 469 (stating that "activity" was the manufacture of products for use on vessels); *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1190 (D. Hawaii 2013)(stating "the general activity giving rise to the incident is the manufacture of products for use on vessels"); *see John Crane, Inc. v. Jones*, 650 S.E.2d 851, 853–54 (Va. 2007)(defining "activity" as the "manufacturing and sale of asbestos-containing products"). Because Crane Co.'s manufacture of essential equipment for U.S. Navy ships has a direct and inextricable link to maritime activity, the second part of the "connection" test is also satisfied. So, this Court has maritime jurisdiction and, thus, must apply maritime law.

---

[3] The plaintiff's alleged exposure to asbestos while serving aboard the *Sam Houston* and the *Bluefish* satisfies the "connection" test as a matter of course. *See Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 467–69 (E.D. Pa. 2011).

**Argument**

A. **Because the plaintiff cannot prove that he was exposed to any Crane Co. product containing asbestos, his products liability claim must fail.**

Products liability, including strict liability, is "part of the general maritime law." *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 865 (1986). Maritime law is "developed by the judiciary" and is "an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 796 (E.D. Pa. 2012)(quoting *East River Steamship Corp.*, 476 U.S. at 864–65). Regardless of whether he asserts a theory of negligence or strict liability, a plaintiff in a products liability case under maritime law must establish causation. *See Lindstrom v. A-C Prod. Liab. Trust.*, 424 F.3d 488, 492 (6th Cir. 2005). To establish causation, a plaintiff must prove that: "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Id*. Apropos to asbestos-exposure cases, "*a mere showing that defendant's product was present somewhere at plaintiff's work is insufficient*." *Id*. (citation omitted)(emphasis added).

Here, the plaintiff has no evidence that he was exposed to any Crane Co. products *containing asbestos*. The plaintiff testified that he believes that he was exposed to asbestos during his submarine training when he had to clean up after maintenance crews on a student prototype. (LRS ¶ 5.) Yet, as the plaintiff admitted, he cannot

identify the manufacturer of any of the valves on the prototype, nor can he prove that he was exposed to asbestos:

> Q. Do you believe that you were exposed to asbestos on the prototype in New York?
>
> A. I can't prove I was.
>
> ***
>
> Q. Do you know the name of any valves – manufacturer of any valves that were on that prototype?
>
> A. I'm—I do not have that information.

(LRS ¶ 6.)

The plaintiff also "believes" that some of the valves aboard the *Sam Houston* and the *Bluefish* had asbestos in their packing and gasket materials. (LRS ¶ 7.) Yet again, as the plaintiff also admitted, he never changed, or assisted anyone with changing, a gasket on a valve during his time in the navy (LRS ¶ 8), and he cannot identify the manufacturer of any packing materials or gaskets that were used on the *Sam Houston.* (LRS ¶ 9.) And although he once helped a machinist change the packing on one valve (LRS ¶ 10), he cannot identify the manufacturer of the packing that was removed or the replacement packing (LRS ¶ 11):

> Q. There was the one time when you assisted an individual who was changing packing on a valve, correct?
>
> A. That is true.

> Q. And you don't know the manufacturer of the valve packing that was removed or the valve packing that was installed after?
>
> A. That's true.

(LRS ¶ 12.)

The plaintiff also could not identify the manufacturer of any specific *valve* that he worked with our around on the *Sam Houston* either:

> We probably had thousands of valves on the boat, both in the engineering spaces and in the forward compartments. Used in all kinds of different systems. And I couldn't say any one particular valve was an Edwards or some other manufacturer.

(LRS ¶ 13.)

Last, the plaintiff admitted that he has *no proof* that Crane Co. valves were even on the *Bluefish*.

> Q. So, my question to you is: Do you have any reason to believe that Crane Co. Valves were on the USS Bluefish while you were present on that boat?
>
> A. No, I have no proof.

(LRS ¶ 14.)

Indeed, the plaintiff only believes that Crane Co. valves were on the *Sam Houston* because he had viewed an equipment list provided to him by his counsel prior to his deposition:

> I couldn't – [we used] a tremendous amount of valves, and it really wasn't my habit to go around and read name plates on valves. So, I could not swear that any given valve was a – from any given manufacturer. But

11

> I feel based on the equipment list that, yes we had – we did have [William Powell Company] valves. We had Crane valves. We had Asco valves. I remember those.

(LRS ¶ 15.)

Merely placing a Crane Co. valve aboard a boat is insufficient as a matter of law to prove causation in an asbestos exposure case. *See Lindstrom*, 424 F.3d at 492. For example, in *Bray v. Ingersoll-Rand Co.*— a nearly identical case— another former submariner and Electric Boat shipyard worker sued multiple manufacturers, including Crane Co., for alleged asbestos exposure. *See Bray v. Ingersoll-Rand Co.*, 2015 WL 728515 (Feb. 19, 2015)(Underhill, J.)**(Ex. A.)** There, like here, the plaintiff could not produce any evidence that Crane Co. manufactured or distributed the asbestos-containing products to which he was allegedly exposed. *See id*. at *6. In granting summary judgment for Crane Co., the district court rejected as insufficient the plaintiff's reliance on "equipment lists" and other testimonial evidence that merely placed Crane Co. valves on a particular submarine, but did not confirm whether: (1) those valves contained asbestos; (2) the plaintiff had worked with those valves; or, (3) the plaintiff was exposed to asbestos in the process. *See id.* at *6–7.[4] The same situation exists here.

---

[4] It is important to note that the district court in *Bray* concluded that the plaintiff's claim failed under both maritime *and* Connecticut product liability law, because both had the same standards of proof for causation. *See Bray,* 2015 WL 728515 at *3–4.

Because the plaintiff cannot prove that he was exposed to any Crane Co. product *containing asbestos*, or that any Crane Co. product was a proximate cause of his injuries, his product liability claim must fail.

**B.     Under maritime law, the plaintiff cannot recover damages for his "loss of life's enjoyment" or lost future earnings.**

Maritime law does not allow recovery for a plaintiff's "loss of life's enjoyment" or lost future earnings. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 33–37 (1990) (holding that maritime law precludes recovery of decedent's lost future earnings); *Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084, 1094 (2d Cir. 1993), *cert. denied*, 510 U.S. 1114 (1994)(holding that maritime law precludes recovery of decedent's lost future earnings, punitive damages and damages for "loss of enjoyment of life"); *Preston v. Frantz*, 11 F.3d 357, 358 (2d Cir. 1993), *cert. dismissed*, 512 U.S. 1279 (1994)(holding that maritime law preempted Connecticut law and precluded recovery of decedent's lost future earnings). The plaintiff, thus, cannot recover damages for his alleged "loss of life's enjoyment" or lost future earnings as a matter of law.

**Wherefore**, the defendant respectfully requests that this Court grant its motion for summary judgment dated September 8, 2015.

                                        THE DEFENDANT,
                                        CRANE CO.

By:    */s/ Jason K. Henderson*
        Jason K. Henderson (ct27042)
        jhenderson@danaherlagnese.com
        Patrick J. Glinka (ct27404)
        pglinka@danaherlagnese.com
        DANAHERLAGNESE, PC
        21 Oak Street
        Hartford, CT 06106
        Phone (860) 247-3666
        Fax (860) 547-1321

**Certificate of Service**

   I hereby certify that on September 8, 2015, a copy of foregoing Memorandum of Law in Support of Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the courts CM/ECF System.

            */s/ Jason K. Henderson*
            Jason K. Henderson (ct27042)
            jhenderson@danaherlagnese.com
            Patrick J. Glinka (ct27404)
            pglinka@danaherlagnese.com
            DANAHERLAGNESE, PC
            21 Oak Street
            Hartford, CT 06106
            Phone (860) 247-3666
            Fax (860) 547-1321