Exhibit A

Case 3:14-cv-00176-VAB   Document 65-1   Filed 09/08/15   Page 2 of 8
Bray v. Ingersoll-Rand Co., Not Reported in F.Supp.3d (2015)
2015 WL 728515

2015 WL 728515
Only the Westlaw citation is currently available.
United States District Court,
D. Connecticut.

Debra BRAY, et al., Plaintiffs,
v.
INGERSOLL–RAND CO., et al., Defendants.

No. 3:13–cv–1561 (SRU).    |    Signed Feb. 19, 2015.

**Attorneys and Law Firms**

Amity L. Arscott, Melissa M. Riley, Embry & Neusner, Groton, CT, for Plaintiffs.

Erminia Amy Labrecque, Adler, Cohen, Harvey, Wakeman And Guekguezian, Charles K. Mone, Pierce, Davis & Perritano, LLP, Boston, MA, Cullen W. Guilmartin, Erin C. O'Leary, John J. Robinson, McCarter & English, LLP, Patrick J. Glinka, Jason Kirk Henderson, Danaher, Lagnese & Sacco, P.C., Tara Lynn Trifon, Locke Lord LLP, Jennifer Elaine Wheelock, Jonathan P. Ciottone, Mark R. Cramer, McGivney & Kluger, P.C., Edward N. Storck, III, Robert S. Bystrowski, Morrison, Mahoney LLP, Frank Audemars Sherer, III, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Richard M. Dighello, Jr ., Updike, Kelly & Spellacy, P.C., Hartford, CT, Geoffrey Lane Squitiero, Halloran & Sage LLP, New Haven, CT, Chenchao Lu, Matthew G. Conway, Conway & Stoughton, LLC, West Hartford, CT, Melicent B. Thompson, Litchfield Cavo LLP, Simsbury, CT, Reed Adam Slatas, Adler Law Group LLC, East Hartford, CT, Andrew J. Murray, Paul E. Dwyer, Edwards Wildman Palmer LLP, for Defendants.

## RULING AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

STEFAN R. UNDERHILL, District Judge.

*1 Debra Bray, executrix of the estate of Edgar St. Jean, and Marilyn St. Jean (collectively, "the plaintiffs") brought this action in Connecticut Superior Court asserting claims for product liability, Conn. Gen.Stat. §§ 52–572m, et seq., loss of consortium (Marilyn St. Jean, only), and punitive damages.[1] Notice of Removal, Ex. A (Complaint), Ex. C (doc. 1–1). Defendant Crane Company ("Crane") timely removed the case to federal court under the federal officer and military contractor defenses, 28 U.S.C. § 1442. Notice of Removal ¶¶ 6–7, 10. At the close of discovery, defendants Aurora Pumps ("Aurora") (doc. 132), BW/IP, Inc. ("BW/IP") (doc. 138), Carrier Corporation ("Carrier") (doc. 133), Crane (doc. 130), Nash Engineering Company ("Nash") (doc. 130), Warren Pumps ("Warren") (doc. 135), and Weir Valves and Controls USA, Inc. ("Weir") (doc. 131), (collectively, "the defendants") filed motions for summary judgment, principally asserting that the plaintiffs had failed to meet their evidentiary burden on all claims.

Based on the record and all pleadings, the plaintiffs have failed to meet their evidentiary burden on all of their claims. The defendants' motions for summary judgment are GRANTED.

### I. Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."Fed.R.Civ.P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party.*Anderson,* 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.,* 963 F.2d 520, 523 (2d Cir.), *cert. denied,*506 U.S. 965 (1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of his pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact.*Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986); *Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."*Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991); *see also Suburban Propane v. Proctor Gas, Inc.,* 953 F.2d 780, 788 (2d Cir.1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative,"

summary judgment may be granted. *Anderson,* 477 U.S. at 249–50.

***2** The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex,* 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex,* 477 U.S. at 323.

**II. Background**

The decedent, Edgar St. Jean, served in the military from 1953 to December 1956. Crane Mot. Summ. J. Br., Ex. B, at 8 (Pls.' Response to Standard Interrogs.) (doc. 127–2). He then joined Electric Boat Corporation ("Electric Boat"), a division of General Dynamics Corporation, as an outside machinist and later, as a general foreman, from approximately 1956 to April 1980. Notice of Removal, Ex. A ¶ 2; St. Jean Aff. ¶ 3–4. His worksite was located in Groton, Connecticut, where St. Jean worked on new construction and the overhauling of nuclear submarines for the U.S. Navy. Notice of Removal, Ex. A ¶ 2; Crane Local R. 56(a)1 Statement ¶ 2 (doc. 127); Pls.' Opp'n Br., Ex. 4 (Electric Boat Records) (doc. 162–4). The plaintiffs allege that the defendants manufactured [2] products used in Electric Boat's shipbuilding and repair business, and that St. Jean was exposed to when using or installing those products. Notice of Removal, Ex. A ¶¶ 2, 5–13. On May 19, 2013, St. Jean died of mesothelioma and asbestosis, which the plaintiffs allege was caused by St. Jean's exposure to and inhalation of asbestos fibers throughout his military and shipbuilding career. *Id.;* Pls.' Opp'n Br., Ex. 7 (Letter from Dr. Laura S. Welch (dated Oct. 8, 2014)) (doc. 151–7); St. Jean. Aff. ¶ 5; Pls.' Opp'n Br., Ex. 10 (Death Certificate) (doc. 162–10).

At the close of discovery, the defendants filed their motions for summary judgment. Those motions raise the same grounds for summary judgment; the defendants argue that the plaintiffs have failed to meet their evidentiary burden with respect to their product liability and loss of consortium claims.

**\*3** In support of their opposition to the defendants' motions for summary judgment, the plaintiffs offered the following evidence: a brief affidavit by the decedent, executed two days before his death; a list of ships upon which St. Jean worked, Crane's Mot. Summ. J. Br ., Ex. B, at 9–10 (doc. 127–2); an affidavit by the plaintiffs' proffered expert witness, Captain R. Bruce Woodruff, Pls.' Opp'n Br., Ex. 4 (doc. 151–4); the deposition testimony of Charles Knapp, *id.,* Ex. 2 (doc. 151–2); the deposition testimony of Timothy Mullane, *id.,* Ex. 3 (doc. 151–3); and the deposition testimony of Robert Choate, *id.,* Ex. 4 (doc. 155–4). As discussed below, that evidence is insufficient to meet the plaintiffs' evidentiary burden on all claims.

**III. Discussion**

**A.** *Choice of Law*

Several defendants have argued that federal maritime common law, not Connecticut state law, should govern the plaintiffs' claims. Aurora Mot. Summ. J. Br. 12–14 (doc. 132–1); Crane Mot. Summ. J. Br. 3–8 (doc. 126); Warren Mot. Summ. J. Br. 3–5 (doc. 135–1). Others have argued that the plaintiffs' exclusive avenue for recovery is the Connecticut Product Liability Act ("CPLA"), Conn. Gen.Stat. §§ 52–572m, *et seq.* BW/IP Mot. Summ. J. Br. 8 (doc. 138); Carrier Mot. Summ. J. Br. 4–5 (doc. 133–2); Nash Mot. Summ. J. Br. 4–5 (doc. 130); Weir Mot. Summ. J. Br. 8–9 (doc. 131).

A party seeking to invoke federal maritime jurisdiction over a tort claim must establish that the activity giving rise to the alleged harm satisfies two criteria-the "location" and "nexus" tests. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 532–34 (1995). The location test requires that the invoking party demonstrate that the injury occurred on navigable waters or was caused by a vessel on navigable waters. *Exec. Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 267–68 (1972). The nexus test requires that the harm suffered have a potentially disruptive effect on maritime commerce and that the general character of the allegedly tortious activity bears "a significant relationship to traditional maritime activity."*Sisson v. Ruby,* 497 U.S. 358, 367 (1990); *E. River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864 (1986); *Tandon v. Captain's Cove Marina of Bridgeport,* 752 F.3d 239, 247–48 (2d Cir.2014). If maritime jurisdiction applies and if there is no federal statute that addresses the harm suffered, then a district court applies general maritime law to determine redress. *E. River S.S. Corp.,* 476 U.S. at 864; *see also Kermarec v. Campagnie Generale Transatlantique,* 358 U.S. 625, 630–32 (1959) (discussing the development of federal common law in maritime cases).

I need not decide whether this case is governed by Connecticut's product liability statute or whether it falls within the ambit of general maritime law. As discussed below, the plaintiffs have failed to meet their evidentiary burden under either standard.

**B.** *Product Liability*

**1.** *Standards*

**a. The Connecticut Product Liability Act**

*\*4 Under Connecticut law, a product liability claim includes all injures caused by the defective manufacture, construction, design, preparation, installation, or packaging of any product. Conn. Gen.Stat. § 52–572m(b). The CPLA is the exclusive remedy for any product defect action brought under Connecticut law, and it includes all actions related to the defect itself and to defects related to placing a product "into the stream of commerce." Conn. Gen.Stat. § 52–572n(a); *Allard v. Liberty Oil Equip. Co.,* 253 Conn. 787, 806 (2000); *Wagner v. Clark Equip. Co.,* 243 Conn. 168, 195 (1997); *Daily v. New Britain Mach. Co.,* 253 Conn. 562, 571 (1986). The elements of a CPLA claim are that

(1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.

*White v. Mazda Motor of Am., Inc.,* 313 Conn. 610, 622 (2014) (internal marks omitted).

**b. General Maritime Law**

General maritime law provides a cause of action for product liability, brought either under a theory of negligence [3] or strict liability. [4] *E. River S.S. Corp.,* 476 U.S. at 865–66 (gathering cases). Under both theories, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered," and (3) that the defendant manufactured or distributed the injurious product. *Lindstrom v. A–C Liab. Trust,* 424 F.3d 488, 492 (6th Cir.2005) (citing *Stark v. Armstrong World Indus., Inc.,* 21 F. App'x 371, 375 (6th Cir.2001)). In order to demonstrate that the allegedly defective product was a "substantial factor" in causing the plaintiff's injury, a plaintiff must show that it is "more likely than not" that exposure to the product caused his injuries. *Ruiz v. Victory Props., LLC,* 315 Conn. 320, 324 (2015). Further, the alleged harm must be "of the same general nature as the foreseeable risk" created by the defendant's defective product. *Id.*

**2.** *Discussion*

To prevail on a product liability claim brought under the CPLA or under general maritime law, the plaintiffs must demonstrate that the defendants manufactured or distributed a defective product, that the defect existed at the time St. Jean utilized the product, that St. Jean was exposed to that defective product without adequate warning or protection, and that exposure to the defective product caused St. Jean's death. Based on the record and pleadings, the plaintiffs have failed to establish that the defendants manufactured/distributed defective products and that St. Jean was exposed to those allegedly defective products.

A party may prevail on an asbestos product liability claim through the use of direct or circumstantial evidence.[5] *In re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 837 (2d Cir.1992); *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1286 (2d Cir.), *cert. denied,* 498 U.S. 920 (1990). Nevertheless, the plaintiffs in this case have offered little evidence[6]—direct or circumstantial—to support their claim.

**\*5** In *Johnson,* the plaintiff provided the jury with "an unusually detailed circumstantial case" to demonstrate proximate causation for his asbestos product liability claim. 899 F.2d at 1286. Johnson's circumstantial case included testimony from eleven fact witnesses who had worked at the Navy yard before, during, and after his employment there. *Id.* Those witnesses were able to identify specific timeframes in which they recalled working with the plaintiff, as well as the names for the specific ships that the plaintiff had worked upon and the prevalence of asbestos dust and fibers at those specific work sites. *Id.* Those witnesses also were able to identify specific manufacturers' names and products, or, if they could not remember a brand name, they were able to describe the asbestos-containing product with enough specificity to allow a jury to draw a reasonable inference between the company, its product, the alleged defect, and the plaintiff's exposure and harm. *Id.* The Second Circuit upheld the *Johnson* jury's verdict, concluding that, when viewed in the light most favorable to the non-moving party, there was sufficient circumstantial evidence in the record for reasonable jurors to resolve the dispute as they did. *Id.* at 1286–87 (citing *Pratt v. Nat'l Distillers & Chem. Corp .,* 853 F.2d 1329, 1337 (6th Cir.1998), *cert. denied,* 489 U.S. 1012 (1989) (internal citations omitted)).

Similarly, in *O'Brien v. National Gypsum Company,* 944 F.2d 69 (2d Cir.1991), and *In Re Brooklyn Navy Yard Asbestos Litigation,* 971 F.2d 831 (2d Cir.1992), the Second Circuit allowed jury verdicts to stand when the plaintiffs were able to provide corroborating circumstantial evidence. In *O'Brien,* the defendant sought to overturn a jury verdict for the plaintiffs by arguing that the jury erroneously had relied on two inadmissible hearsay statements in reaching its liability finding. 944 F.2d at 72. The Second Circuit held that, even if the alleged hearsay evidence had been excluded, there was sufficient evidence in the record for the jury to reach its conclusion. *Id.* at 72–73. In *In Re Brooklyn Navy Yard Asbestos Litigation,* the Second Circuit held that the plaintiffs' circumstantial evidence was sufficient to support a jury's finding of causation. 971 F.2d at 837. Specifically, the plaintiffs had introduced evidence that the decedents had spent time at the naval yard when the site was "extremely dusty with asbestos fibers," that the defendants had supplied certain asbestos-containing products used in construction at the yard, and that all employees at the yard worked across departments and divisions such that all workers were exposed to asbestos. *Id.*

Unlike *Johnson, O'Brien,* and the other Brooklyn Naval Yard asbestos cases, the plaintiffs here have not offered evidence connecting St. Jean's exposure to asbestos to products manufactured by Aurora, BW/IP, Crane, Carrier, Nash, Warren, or Weir. In his affidavit, St. Jean attests that he "worked with and around asbestos-containing products during [his] employment at General Dynamics Corp. / Electric Boat Division."St. Jean Aff. ¶ 3.[7] St. Jean goes on to note that he can "specifically recall today using and/or being exposed to asbestos products and/or products containing, involving, or requiring the use of asbestos."St. Jean. Aff. ¶ 5. Additionally, St. Jean's death certificate, medical report, and medical records indicate that he died of complications from two diseases whose only known cause is exposure to asbestos, mesothelioma and asbestosis. Death Certificate 1[8]; W.W. Backus Hospital Records 7[9]; Letter from Laura S. Welch (dated Oct. 8, 2014).[10]

**\*6** St. Jean's coworkers noted that as an outside machinist St. Jean worked on "basically anything," including "engines, valves, periscopes, torpedo tubes" and would assist other divisions, including electricians and pipefitters. Mullane Depo. Tr. 12:4–23[11]; Knapp Depo. Tr. 29:16–32:6. Those responsibilities extended to overhauls (i.e., retrofitting) and new construction. Mullane Depo. Tr. 12:4–23. When St. Jean became a general foremen, his duties shifted to include setting machinery, assembling and dissembling valves and piping, and assisting in construction in the engine and reactor rooms. *Id.* 13:10–17:24, 25:7–26:3, 28:21–29:6, 31:16–32:11, 78:22–79:6, 80:15–81:3. Mullane noted that pipefitting, particularly working with gaskets, often involved contact with asbestos-containing products. *Id.* 20:15–21:6, 22:24–24:24. Thus, a reasonable fact-finder could find that St. Jean was exposed to asbestos and that that exposure caused his injuries.

The plaintiffs have not, however, demonstrated that the defendants manufactured or distributed asbestos-containing products utilized at the Groton shipyard. Mullane could not identify the names of any manufacturers for the equipment

Bray v. Ingersoll-Rand Co., Not Reported in F.Supp.3d (2015)
2015 WL 728515
Case 3:14-cv-00176-VAB   Document 65-1   Filed 09/08/15   Page 6 of 8

most likely to have contained asbestos—valves, pipes, and gaskets. Mullane Depo. Tr. 19:8–20:8 ("Q: Any other manufacturers, brand names, trade names of valves that you recall during your work as an apprentice, work leader or foreman? A: Not really, unless I looked at a list. I could pick them out."), 20:22–21:23, 32:12–21, 34:8–35:12. Another coworker, Charles Knapp, noted that Crane check valves were used in a submarine's nuclear compartment, but he went on to testify that workers in the nuclear compartment were required to wear respirators to guard against asbestos and radiation exposure.[12] Knapp Depo. Tr. 76:4–78:9, 86:24–89:1 (referring to work performed by Robert Beckwith). Coworker Robert Choate recalled the use of Carrier air conditioning units, as well as testing those units in a non-construction department, but he noted that he had no personal knowledge or recollection of seeing those units installed or used in any of the submarines. Choate Depo. Tr. 58:5–59:12, 62:3–22, 64:1–66:22, 67:12–68:4.[13] Unlike the witnesses in *Johnson,* Mullane and Knapp were not asked to describe the equipment used during new submarine construction or overhauling, so there was no testimony that could be used to identify the manufacturers/distributors of asbestos-containing products at the Groton shipyard.[14]

The plaintiffs have attempted to bolster the lack of identifying information with materials that are either inadmissible or that invite speculation. For example, the plaintiffs offer their expert's "representative" equipment lists for different categories of submarines. Captain R. Bruce Woodruff Aff. 7–9. Woodruff indicates that those lists are not unique or specific to the boats overhauled or built at the Groton shipyard; instead, his lists are hypotheticals created by reviewing the U.S. Navy's equipment orders for those general classes of submarines and extrapolating possible parts lists. *Id.* 7, 10 (noting that the specific vendors listed "supplied significant amounts of machinery and valves" to the submarine shipbuilding program, but failing to distinguish whether those products contained asbestos and were used at the Groton shipyard). The plaintiffs invite the factfinder to speculate that Woodruff's "representative list" reflects the actual supply lists and equipment used at the Groton shipyard.

**\*7** Similarly, the plaintiffs have submitted a document, "Exhibit A," in response to the defendants' request for production. That document states, "Decedent recalled the following manufacturers and/or products," and proceeds to offer a list of manufacturers and general categories of products. Pls.' Response to Defs.' Requests for Production, Ex. A. There is no indication that that document was produced or dictated by the decedent, and further, there is no way to authenticate the plaintiffs' list. *See* Fed.R.Evid. 902–03. Exhibit A also does not appear to fall into any of the hearsay exceptions provided by the Federal Rules of Evidence. *See* Fed.R.Evid. 803, 804, 807. Accordingly, the information in Exhibit A is barred by the rule against hearsay. Fed.R.Evid. 802. Even if the list were admissible, it has little probative value. The categories offered are general and too vague to allow a reasonable juror to find that a specific defendant's products contributed to St. Jean's asbestos exposure.

Consequently, the plaintiffs have failed to meet their evidentiary burden on the issue of causation, and they have not offered evidence from which a reasonable jury could find a causal link between the defendants' products and St. Jean's exposure to asbestos. Thus, under both the CPLA and general maritime law, the plaintiffs' product liability claim fails.

**C.** *Loss of Consortium*

Although general maritime law does not provide relief for a claim for loss of consortium, *Miles v. Apex Marine Corporation,* 498 U.S. 19, 37 (1990), a party may bring a common law claim for loss of consortium under state law.[15] *Yamaha Motor Corp. U.S.A. v. Calhoun,* 516 U.S. 199 (1996) (finding maritime law does not preempt recovery under state law for loss of society when maritime jurisdiction applies); *Mueller v. Tepler,* 312 Conn. 631 (2014); *cf. Am. Export Lines, Inc. v. Alvez,* 446 U.S. 274 (1980) (holding that general maritime law allows for an independent common law cause of action for loss of society for a spouse's nonfatal personal injury).[16] Under Connecticut law, a loss of consortium claim is an indirect claim that is "derivative of the injured spouse's cause of action" and is "barred when a suit brought by the injured spouse [or his estate] ha[s] been terminated by settlement or by an adverse judgment on the merits." *Mueller,* 312 Conn. at 662; *Izzo v. Colonial Penn Ins. Co.,* 203 Conn. 305, 312–14 (1987); *Ladd v. Douglas Trucking Co.,* 203 Conn. 187, 195 (1987) (citing *Hopson v. St. Mary's Hosp.,* 176 Conn. 485, 494 (1979)); *see also DeMarinis v. United Servs. Auto. Ass'n Cas. Ins. Co.,* 44 Conn.App. 172, 177–78 (1997); Conn. Gen.Stat. § 52–555a.

As noted above, the plaintiffs have failed to meet their evidentiary burden with respect to their product liability claims. Because Connecticut law does not allow recovery for a loss of consortium claim when the injured spouse's claim has been terminated, Marilyn St. Jean's loss of consortium claim also fails.

## IV. Conclusion

***8** The plaintiffs have failed to meet their evidentiary burden on their product liability claims against defendants Aurora, BW/IP, Carrier, Crane, Nash, Warren, and Weir. Because the plaintiffs' product liability claims have failed, Marilyn St. Jean's derivative state law claim for loss of consortium cannot be sustained. Accordingly, Aurora, BW/IP, Carrier, Crane, Nash, Warren, and Weir's motions for summary judgment are GRANTED. The Clerk shall enter judgment for those defendants and close this case.

It is so ordered.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 728515

Footnotes

1    The plaintiffs also allege civil conspiracy and loss of enjoyment/earnings against defendant Metropolitan Life Insurance Company. Notice of Removal, Ex. A ¶¶ 14–21.

2    Although many of the defendants are manufacturers, some are the successors-in-interest to businesses that manufactured products for use by the U.S. Navy in the construction of its nuclear submarines. Notice of Removal, Ex. A ¶¶ 3f (Crane), 3t (Weir Valves). Crane and Weir do not contest their alleged parent, alter-ego, or successor-in-interest liability.

3    When bringing a product liability action under a theory of negligence, common law principles apply. *Norfolk Shipbuilding & Drydock Corp. v. Garris,* 532 U.S. 811, 813 (2001); *Becker v. Poling Transp. Corp.,* 356 F.3d 381, 388 (2d Cir.2004). The elements of a negligence claim include duty, breach, proximate and factual causation, and injury or harm deriving from that breach of duty. *Garris,* 532 U.S. at 513–14.

4    Several federal courts of appeal have drawn on the Restatement of Torts to define the parameters of a claim for product liability brought under a theory of strict liability:

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured.

> *Sieracki v. Seas Shipping Co.,* 149 F.2d 98, 100 (3d Cir.1945) (citing *Restatement (First) of Torts* § 395); *see also Lindstrom,* 424 F.3d at 492–93; *Chavez v. Noble Drilling Corp.,* 567 F.2d 287, 289 (5th Cir.1978); *Sheffield v. Owens–Corning Fiberglass Corp.,* 595 So.2d 443, 450 (Ala.1992) (citing *Restatement (Second) of Torts* § 433b, comment a).

5    Defendant Aurora argues that the plaintiffs must offer direct evidence of causation in order to prevail on their product liability claim. Aurora Pumps Mot. Sum. J. Br. 22. The Second Circuit has soundly rejected that argument. *See O'Brien v. Nat'l Gypsum Co.,* 944 F.2d 69, 72 (2d Cir.1991) ("it is beyond any doubt that circumstantial evidence alone may suffice to prove adjudicative facts.") (internal citations omitted); *In Re Brooklyn Navy Yard Asbestos Litig.,* 971 F.2d 831, 837 (2d Cir.1992).

6    Several defendants have argued that the Court should ignore the plaintiffs' proffered evidence as inadmissible hearsay. A party "asserting that a fact cannot be or is genuinely disputed" must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials."Fed.R.Civ.P. 56(c). Although the rules of evidence regarding admissibility do not change on a motion for summary judgment, *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997), a court may look to all materials in the record when evaluating a motion for summary judgment.Fed.R.Civ.P. 56(c)(2); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000). A district court may consider evidence that would not be admissible if it finds that the evidence can be reduced to a form that would be admissible or usable at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986); *Lyons v. Lancer Ins. Co.,* 681 F.3d 50, 57 (2d Cir.2012) (citing *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 309 (2d Cir.2008)); *see also U.S. Secs. & Exch. Comm'n v. Elecs. Warehouse, Inc.,* 689 F.Supp. 53, 62 n. 12 (D.Conn.1988).

7    St. Jean's affidavit is likely admissible as a statement made under belief of imminent death. Fed.R.Evid. 804(b)(2).

8    St. Jean's death certificate is admissible as a public record of vital statistics. Fed.R.Evid. 803(9).

9    St. Jean's hospital records are admissible as statements made for medical diagnosis or treatment. Fed.R.Evid. 803(4).

10    Dr. Welch's letter is admissible as a statement made for medical diagnosis or treatment. *Id.*

| | |
|---|---|
| 11 | Although Mullane noted that he never worked "side-by-side" with St. Jean, when drawing all inferences in the plaintiffs' favor, Mullane's testimony can be interpreted as circumstantial evidence allowing a reasonable fact-finder to infer that St. Jean was exposed to asbestos during the course of his employment with Electric Boat. Mullane Depo. Tr. 15:8–16, 29:23–30:9, 36:4–20; *see also* Elec. Boat Records 4. |
| 12 | Knapp also identified Warren pumps, but he noted that those pumps were used in new construction on certain nuclear submarines and that there was no contamination at new construction sites. Knapp Depo. Tr. 115:8–116:11, 117:3–118:5. |
| 13 | Choate worked at Electric Boat from 1965 to 1969, and again after 1973. Choate Depo. Tr. 60:1–2. When he rejoined Electric Boat in 1973, he noted that he no longer had contact with equipment used on the ships. *Id.* 60:9–13. |
| 14 | When prompted with specific brand or trade names, Mullane attempted to identify what parts that brand had manufactured or distributed. Mullane Depo. Tr. 81:20–24 (Crane); 84:6–24 (same). He was able to recall only the brands Westinghouse and General Electric without prompting. Choate was prompted to describe certain elements of the products he recalled, such as their label, Choate Depo. Tr. 66:10–22, or the color of the units. *Id.* 68:6–8. He was able to answer some of those questions, but he could only recall units as they were used in his department and had no specific recollection of seeing the units installed on the ships. *Id.; see also id.* 77:3–79:2, 91:9–91:17. |
| 15 | Loss of consortium may also be referred to as "loss of society." |
| 16 | Some defendants have argued that general maritime law does not allow recovery for loss of consortium claims. Aurora Mot. Summ. J. Br. 31–32; Warren Mot. Summ. J. Br. 11–12. Those arguments conflate the statutory limitations placed on recovery for cases brought under the Death on the High Seas Act ("DOHSA"), 46 U.S.C. § 762, and the Jones Act, 46 U.S.C. § 688, with actions brought under common law. Since 1980, the Supreme Court has held that DOHSA and the Jones Act do not preclude claims made under state common law for wrongful death and loss of society, as well as other personal injury torts. *Yamaha Motor Corp.,* 516 U.S. at 213–216; *Jerome B. Grubart, Inc.,* 513 U.S. at 545 (maritime jurisdiction "does not result in automatic displacement of state law"); *cf. In Re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.,* 836 F.2d 750, 756 (2d Cir.1988) (noting that general maritime law allows a spouse to bring a common law claim under state law for loss of consortium). |

**End of Document**  © 2015 Thomson Reuters. No claim to original U.S. Government Works.