**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| RONALD ZIMMERMAN | : Case No. 3:14-cv-00176-MPS |
| Plaintiff, | : |
| v. | : |
| AIR & LIQUID SYSTEMS CORPORATION, | : |
| AMETEK, INC., CBS CORPORATION, a | : |
| Delaware Corporation, f/k/a Viacom Inc., | : |
| successor by merger to CBS Corporation, a | : |
| Pennsylvania Corporation, f/k/a Westinghouse | : |
| Electric Corporation and as successor in | : |
| interest to B.F. Sturtevant, CRANE CO., | : |
| EASTON CORP., FOSTER WHEELER L.L.C., | : |
| GENERAL ELECTRIC COMPANY, and VIAD | : |
| CORP. | : |
| Defendants. | : |
| | : September 8, 2015 |

**DEFENDANT GENERAL ELECTRIC COMPANY'S LOCAL RULE 56(a)(1)**
**STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT**

UNDISPUTED FACT # 1:  The plaintiff, Ronald Zimmerman, alleges that he was

exposed to asbestos during his career in the United States Navy from 1966 to 1971.

(See Complaint, attached hereto as Exhibit 1, at ¶ 4).

UNDISPUTED FACT #2:  General Electric Company (hereinafter "GE") manufactured

steam turbines for the United States Navy to be used for propulsion and for the

shipboard generation of electricity during the time period in which the plaintiff served in the Navy.  (See Affidavit of David Skinner, attached hereto as Exhibit 2, at ¶¶ 1 and 2).

UNDISPUTED FACT #3:  Mr. David Skinner is a former GE employee with a Bachelor of Science degree and a Master of Science degree in Mechanical Engineering.  Mr. Skinner worked in the contracting process, design, manufacture, installation, operation and maintenance of all types of GE steam turbines including those that were manufactured for the United States Navy.  (Exhibit 2 at ¶ 1).

UNDISPUTED FACT #4:  Marine steam turbines built by GE for use in naval warships were built according to a very detailed set of military specifications known as "MilSpec".  GE was required to comply with the MilSpec when it manufactured turbines for the Navy.  (Exhibit 2 at ¶ 3).

UNDISPUTED FACT #5:  The MilSpec governing naval propulsion turbines indicated that heat insulation materials were to be provided by the shipbuilder.  (Exhibit 2 at ¶ 4).

UNDISPUTED FACT #6:  GE did not manufacture or sell Navy turbines with insulation materials.  (Id.).

UNDISPUTED FACT #7:   GE shipped Navy turbines to the shipbuilder "bare metal," meaning they only had a coat of paint on the exterior surface.  (Id.).

UNDISPUTED FACT #8:   GE was not involved in the process of supplying and/or installing heat insulation materials.  (Id.).

UNDISPUTED FACT # 9:  The plaintiff joined the Navy in 1966.  Following basic training, he initially trained in electronics in Great Lakes, Illinois.  (See Deposition of Ronald Zimmerman, dated March 4, 2014, attached hereto as Exhibit 3, at pp. 33-36).

UNDISPUTED FACT # 10:  The plaintiff then attended nuclear power school in Bainbridge, Maryland.  His training did not involve any work with machinery.  (Id. at pp. 36-37).

UNDISPUTED FACT # 11:  Following nuclear power school, the plaintiff was assigned for additional nuclear power training at a facility in West Milton, New York.  His training included both classroom work and work on a nuclear submarine prototype.  The prototype consisted of a working nuclear reactor compartment and working submarine engine room, i.e., a working replica of the engineering space on a nuclear submarine.  (Id. at pp. 37-43).

UNDISPUTED FACT # 12:  While working on the prototype, the plaintiff was not part of any maintenance crew and did no hands on work on machinery or equipment.  (Id. at p. 45).

UNDISPUTED FACT # 13:  With respect to the turbines which were part of the prototype, the plaintiff was unable to testify that any turbine was ever opened in his presence or that any asbestos insulation on any of the turbines was ever disturbed. (See Deposition of Ronald Zimmerman, dated March 5, 2014, attached hereto as Exhibit 4, at p. 286).

UNDISPUTED FACT # 14:  After completion of his training at West Milton, the plaintiff attended submarine school in Groton, Connecticut.  Submarine school consisted of an eight week program in which the plaintiff learned more about the operation of submarines generally and certain emergency procedures.  Submarine school did not involve any work with machinery.  (Exhibit 3 at pp. 52-54).

UNDISPUTED FACT # 15:  Some time in 1968, after his training was completed, the plaintiff was assigned to the USS Sam Houston.  (Id. at p. 54).

UNDISPUTED FACT # 16:  The Sam Houston was a nuclear powered ballistic missile submarine.  The plaintiff described that there were two crews assigned to the Sam Houston and that each of the crews were assigned to alternating two-month patrols.

- 4 –

Between patrols, routine maintenance was performed and the ship was re-provisioned for the next patrol.  (Id. at pp. 57-58).

UNDISPUTED FACT # 17:  The plaintiff was personally responsible for certain mostly electronic components while other personnel were responsible for machinery maintenance.  (Id. at pp. 64-65).

UNDISPUTED FACT # 18:  The plaintiff recalled one instance where he assisted a machinist who was repacking a valve, but he was unable to recall the name of the manufacturer of that particular valve.  (Id. at pp. 65-67).

UNDISPUTED FACT # 19:  While on patrol with the *Sam Houston*, The plaintiff's responsibility was to watch the "local monitoring equipment" for the reactor.  This equipment displayed the power, temperature, flows and pressure related to the reactor operation.  (Id. at pp. 71-73).

UNDISPUTED FACT # 20:  On a later patrol, the plaintiff earned a higher qualification, so he was more responsible for the actual operation of the reactor.  (Id. at p. 77).

UNDISPUTED FACT # 21:  With respect to his service on *Sam Houston*, the plaintiff was not involved with any insulation which may have been on any of the ship's equipment.  (Id. at pp. 94-95).

UNDISPUTED FACT # 22:  The plaintiff did not personally work on the main propulsion turbines on the *Sam Houston* and did not recall anyone else working on that equipment in his presence  (Exhibit 4 at p. 236).

UNDISPUTED FACT # 23:  The plaintiff did not observe any of the insulation disturbed on the main propulsion turbine on the *Sam Houston.*  (Id. at pp. 236-37).

UNDISPUTED FACT # 24:  Similarly, with respect to the ship's service turbine generators on the *Sam Houston,* the plaintiff did not personally work on that equipment, he did not recall anyone else working on that equipment, and did not observe anyone removing any insulation from that equipment.  (Id. at pp. 241-42).

UNDISPUTED FACT # 25:  The plaintiff further testified that both the main propulsion units and the ships service turbine generators on the *Sam Houston* were "very reliable components.  (Id. at p. 242).

UNDISPUTED FACT # 26:  When asked if he could testify regarding any asbestos exposure he may have experienced on the *Sam Houston* from GE equipment, the plaintiff stated, "I really have no idea."  (Id. at pp. 251-52) ("Q.  Would it be fair to say that you can't testify today under oath that you were exposed to any asbestos or GE products onboard the Sam Houston? A. I really have no idea.").

UNDISPUTED FACT # 27:  The plaintiff was next assigned to the *USS Bluefish*, which was under construction at the Electric Boat shipyard in Groton, Connecticut.  (Exhibit 3 at p. 95).

UNDISPUTED FACT # 28:  The plaintiff reported to the *Bluefish* in mid-1969.  At that time, the Bluefish was in "the Ways" at Electric Boat.  The ship was launched in January 1970, and commissioned in January 1971.  While the ship's construction was being completed, the plaintiff visited the ship to learn its systems and to stand watch. Eventually, the crew moved onto the *Bluefish* full-time.  (Id. at pp. 98-104).

UNDISPUTED FACT # 29:  The *Bluefish's* main propulsion machinery had been installed before the plaintiff came aboard the ship.  The plaintiff, however, did not know whether that machinery had been insulated by the time he first came aboard.  (Exhibit 4 at 257-258).

UNDISPUTED FACT # 30:  The plaintiff also had no recollection of insulation being applied to the *Bluefish*  machinery in his presence.  (Id. at p. 258).

UNDISPUTED FACT # 31:  After the *Bluefish* was commissioned and went to sea, the plaintiff's duties were similar to his duties on the *Sam Houston*.  (Exhibit 3 at pp. 105-106).

UNDISPUTED FACT # 32:  In the *Bluefish's* initial operations, the ship experienced buoyancy problems.  There were no major problems with the ship's machinery.  (Id. at 108).


UNDISPUTED FACT # 33:  During the entire time that he served on the *Bluefish*, the plaintiff had no recollection of any of the insulation being disturbed either on the main propulsion turbines or on the ships service turbine generators.  (Exhibit 4 at pp. 262-63).


UNDISPUTED FACT # 34:  The plaintiff left the Navy in late 1971.  (Exhibit 3 at pp. 111-12).

THE DEFENDANT,
GENERAL ELECTRIC
COMPANY

By:    */s/ Dan E. LaBelle*
Dan E. LaBelle, Esq.
HALLORAN & SAGE, LLP
Fed. Bar #ct 01984
315 Post Road West
Westport, CT  06880
Telephone: (203) 227-2855
szczesny@halloransage.com

## CERTIFICATION OF SERVICE

This is to certify that on this 8th day of September, 2015, a copy of the foregoing Local Rule 56 Statement was filed electronically on the Court's CM/ECF system.  Notice of this filing will be sent to all counsel of record for viewing via the Court's ECF system.


> _/s/   Dan E. LaBelle_____
> Dan E. LaBelle